***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Dollar, along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Auto Owners Insurance Company was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff's average weekly wage was $343.57, which yields a weekly compensation rate of $229.06, based upon the Form 22.
5. Plaintiff received $9,328.00 in unemployment compensation benefits.
6. Defendants are entitled to deduct the sum of $250.00 from any sums awarded plaintiff, which represents one-half of the mediation fee.
7. The parties stipulated the following documentary evidence:
a. Medical records, 347 pages, and
b. Form 18 with 8 May 2002 letter.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a fifty-three year old, with a ninth-grade education who was employed as a plant technician with defendant-employer. The employer operated an interior landscaping service, which provided plants for businesses and offices. Plaintiff's duties included loading chemicals, moss and other plant items in the service van, watering and cleaning plants at various locations on her route, cutting and spraying plants, and driving the van from the route. Judy and Jerry Matthews owned the defendant-employer, and as such, employees were instructed to report any problems or injuries to Mrs. Matthews.
2. Plaintiff had a prior work-related injury with defendant-employer on or about 7 September 1995. Therefore, she was familiar with the reporting requirements for an on-the-job accident.
3. Since at least 1998, plaintiff has sought and received treatment for her low back pain. On 29 December 1998, she sought treatment at the emergency room of Northeast Medical Center in Concord for middle lumbar pain shooting down into her legs. She was given pain medication and instructed to follow-up with her family physician.
4. On 26 April 1999, plaintiff presented to Dr. Mark Redding of Carolina Neurosurgery and Spine Associates for a six-month history of low back pain. An MRI revealed multilevel spondylosis, slight disc at C6-7 with bilateral foraminal stenosis, and a large herniated disc at L4-5 paracentral to the right. On or about 25 May 1999, Dr. Mark Redding performed a lumbar diskectomy at right L4-5. Plaintiff was out of work for fifty-seven days following the surgery.
5. On 14 July 1999, Dr. Martin Henegar of Carolina Neurosurgery saw plaintiff for complaints of L5 radiculopathy on the left. He recommended conservative treatment with Medrol Dosepak, Pepcid and Lorcet. Plaintiff returned on 20 July 1999 with additional left-sided symptoms. A second MRI was ordered, but plaintiff elected not to keep the appointment. By 18 October 1999, Dr. Redding began prescribing Davrocet in addition to the Medrol Dosepak for relief of the left-sided radiating pain. Dr. Redding last saw plaintiff on 10 January 2000 for headaches related to her cervical osteoarthritis. Dr. Redding prescribed Lortab and Celebrex for treatment.
6. Beginning on 29 March 2000, plaintiff sought treatment from Dr. Ranjan Roy of Rowan Neurosurgical Associates in Salisbury on referral of Dr. Cheryl Sexton. Testing revealed multilevel degenerative disc disease, and foraminal stenosis from C4-T1. On 8 June 2000, Dr. Roy performed a multilevel anterior cervical diskectomy and fusion from C4-7 with tricortical allograft and plating C4 to C7. A second surgery for the C7-T1 was recommended. As of 1 August 2000, Dr. Roy released plaintiff to return to full-time work, effective 8 August 2000. Dr. Roy noted plaintiff was continuing to take Davrocet for low back pain, which she continued to have after that surgery.
7. Plaintiff missed forty-three days of work due to the 8 June 2000 surgery by Dr. Roy.
8. On 14 August 2000, plaintiff was involved in a motor vehicle accident, which resulted in her missing an additional thirty-one days from work. She sought treatment from Dr. Roy, who took her out of work to attend therapy.
9. On 24 January 2001, plaintiff returned to Dr. Roy for a routine visit, during which she complained of a grinding sensation in her neck and bilateral arm numbness. Dr. Roy issued a ten-pound lifting restriction for three months.
10. Between 9 May 2001 and 13 September 2001, neurologist Dr. Nick Grivas evaluated plaintiff's cervical condition. By 13 September 2001, Dr. Grivas authorized her to return to work.
11. On 30 January 2002, plaintiff sought treatment with family physician Dr. Victor Ha at Richfield Family Physicians, where she reported a history of low back pain, which began a week ago while she was doing some lifting at work and felt a pop. Dr. Ha ordered spine films and MRI and referred plaintiff to neurosurgeon Dr. Mark Lyerly.
12. An MRI on 7 February 2002 revealed degenerative disc disease at L3-4 and L4-5 with a disc bulge or rupture at L4-5.
13. Dr. Lyerly began treating plaintiff on 13 February 2002 for a history of severe back and bilateral leg pains that were acutely worse after an on-the-job accident sometime in January of 2002. Plaintiff reported she worked watering plants pulling around a fairly large water reservoir when she felt and heard a large pop with increased pains. After low dose medications failed to provide long-term relief, a pump was implanted on 29 November 2002 for intrathecal medication.
14. Plaintiff was terminated from her employment on 24 January 2002 due to poor job performance.
15. At the hearing, plaintiff testified she was working with Ms. Drye on 2 January 2002 when she stooped down to pick up a poinsettia and felt and heard a pop in her back. However, the plaintiff did not report this alleged incident to her employer and did not seek medical attention for the alleged incident.
16. In late June 2002, Mrs. Matthews learned plaintiff alleged she had been injured on the job, and the workers' compensation carrier was notified. On 27 June 2002, Bob Carlton, and adjuster with the workers' compensation carrier, interviewed Pearlie Drye regarding plaintiff's alleged injury on the job. During the interview, Ms. Drye indicated she and plaintiff had worked together for approximately five years, and that Judy or Jerry Matthews were their supervisors. Ms. Drye indicated that a couple of times plaintiff had stated she had sprained her back or felt like it, but Ms. Drye did not remember specific times when this occurred. Ms. Drye did not know whether plaintiff had ever reported such incidents to Judy or Jerry Matthews.
17. At the hearing, Ms. Drye testified that the defendant-employer had terminated her in late January of 2002. Ms. Drye admitted plaintiff frequently complained of back pain on the job. Ms. Drye offered testimony in direct contradiction to her recorded statement. As the recorded statement was taken approximately six months after the alleged injury, the undersigned finds that statement more likely to be credible. Therefore, Ms. Drye's testimony at the hearing is rejected.
18. Plaintiff gave conflicting histories of the onset and nature of the injury to Ms. Drye, Dr. Ha, Dr. Lyerly and at the hearing before the undersigned.
19. On 18 July 2003, plaintiff first filed an I.C. Form Notice of Accident to Employee with the Industrial Commission.
20. Plaintiff failed to give proper notice to her employer of any alleged on-the-job accident. Plaintiff failed to offer reasonable excuse to the Commission, particularly in light of her prior work-related injury.
21. Defendants were prejudiced by plaintiff's failure to give timely notice of her alleged claim.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSION OF LAW
Plaintiff failed to comply with the notice requirement as articulated in N.C. Gen. Stat. § 97-22. This failure to give proper notice unduly prejudiced defendants by delaying defendants' ability to manage delivery of proper medical attention and hampering their ability to investigate the claim. Therefore, plaintiff's claim is barred due to her failure to give timely notice.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim is, and under the law must be, DENIED.
2. Each side shall pay its own costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
DISSENTING:
 S/____________________ THOMAS JEFFERSON BOLCH COMMISSIONER